# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

JAMES J. M.,                    )

                                   )

                **Plaintiff,**        )

                                   )

v.                              )        **Case No. 19-CV-0152-CVE-JFJ**

                                   )

ANDREW M. SAUL,          )

**Commissioner of Social**       )

**Security Administration,**     )

                                   )

              **Defendant.**      )

## OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 16) of the magistrate judge recommending that the Court affirm the decision of the Commissioner of the Social Security Administration (the Commissioner) to deny plaintiff's claim for supplemental security income benefits. Plaintiff has filed a timely objection (Dkt. # 17) to the report and recommendation, and defendant has filed a response (Dkt. # 18) to plaintiff's objection.

## I. BACKGROUND

Plaintiff submitted an application for supplemental security income (SSI) benefits on August 4, 2016, alleging he had been disabled since December 16, 2008. Dkt. # 10, at 167. Plaintiff's application was based on plaintiff's bipolar disorder, depression, and agoraphobia. Id. Plaintiff's claim was denied initially and upon reconsideration. Id. at 66-76, 78-89, 99. Plaintiff requested a hearing before an administrative law judge (ALJ), and the hearing was held on July 23, 2018. Id. at 40. Plaintiff was represented by counsel at the hearing. Id.

At the outset of the hearing, plaintiff's counsel noted plaintiff had previously been on SSI for his mental health problems.[1]  Id. at 48.  Plaintiff began receiving SSI in April 2009.  Id. at 326.  In December 2014, the Social Security Administration (SSA) conducted a Continuing Disability Review that indicated plaintiff did not show any medical improvement.  Id.  Despite this finding, plaintiff stopped receiving SSI.  Id.  Initial case analysis by the SSA's medical consultant indicated termination was likely due to plaintiff's incarceration in September 2014.  Id.  Plaintiff was released from prison on August 3, 2016 and applied for SSI the following day.  Id.  Before plaintiff testified, plaintiff's counsel stated it was his understanding that plaintiff's recent incarceration was due, in part, to his mental health issues.  Id. at 48.

During the hearing, plaintiff testified he was forty-nine years old and that he had not worked since December 16, 2008.  Id. at 49.  Plaintiff also testified that he currently lived in the garage at his mother's house, stating that because of his severe mood swings he was not allowed to stay in the house.  Id. at 50.  Plaintiff described having frequent auditory hallucinations and some visual hallucinations.  Id. at 50-53.  Plaintiff also explained that he had severe anxiety that caused additional digestive and gastric distress.  Id.  Plaintiff stated he was in therapy and on medication to treat his mental illness and that the treatment (administered through Grand Lake Mental Health Center) was helping manage his symptoms. Id., id. at 59.  Plaintiff noted that his behavioral therapy sessions with "Bob" (Robert Blasdel) were particularly useful.  Plaintiff stated that he held a job prior to being on SSI; however as a result of his paranoia, he "walked off the job." Id. at 55.  Finally,

---

[1]  The Court notes that neither plaintiff's previous successful application nor the notice of termination appears in the record before the ALJ.

plaintiff confirmed counsel's representation that his recent incarceration was related to his inability to control his behavioral and hallucinatory symptoms.  Id. at 60.

The ALJ then called a vocational expert (VE) to testify and posed a hypothetical wherein he asked whether someone with the plaintiff's limitations could perform the job he had previously held in 2008.  Id. at 62.  The VE testified that the hypothetical claimant would not be able to perform such a job because it would require "skilled" work. The VE did state that other jobs would be available to the plaintiff that were "unskilled."  Id. at 61-63.  Those included industrial sweeper cleaner and hand packager.  Id.  After the hearing, plaintiff submitted additional medical evaluations from Grand Lake Mental Health Center: a Mental Residual Functional Capacity Assessment (MRFCA) and a Mental Status Form (MSF), completed by Weldon John Mallgren, D.O., in July 2018.  Id. at 20.

On August 21, 2018, the ALJ issued a written decision denying plaintiff's claim for SSI benefits.  In the decision, the ALJ found that, while plaintiff reported working intermittently since the application date, the work did not rise to the level of substantial gainful activity (SGA). Id. at 22. The ALJ further found that plaintiff had two severe impairments–schizoaffective disorder of the bipolar type and obesity–that significantly limited his ability to perform basic work activities.  Id. at 23.  The ALJ also noted the presence of non-severe impairments of hypertension and high cholesterol.  Id.  After noting those impairments, the ALJ found that neither the impairments nor the combination of impairments met or exceeded the requirements to establish an impairment in the Listings of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.  In making that finding, the ALJ found that the criteria required to establish an impairment were not found under "paragraph B" of  listings 12.03 (schizophrenia spectrum and other psychotic disorders) or 12.04 (depressive, bipolar and related disorders) because the plaintiff's mental impairments did not cause at least two

3

"marked" limitations or one "extreme limitation." Id. at 24.  The ALJ also found that the "paragraph

C" criteria were not satisfied because "[t]he claimant has an inconsistent history of medication

compliance in the record."  Id.  The ALJ stated that the plaintiff's behavior indicated "he had the

ability to manage his psychologically based symptoms" and that treatment diminished the plaintiff's

symptoms of anxiety, depression, and hallucinations. Id. at 24-25.

After finding that plaintiff did not meet a listed impairment at step three, the ALJ proceeded

to step four of the analysis and found that plaintiff had the residual functional capacity (RFC) to:

> perform medium work as defined in 20 CFR 416.967(c) except: the claimant can
> lift/carry and/or push/pull 50 pounds occasionally and up to 25 pounds frequently.
> He can sit for at least 6 hours out of an 8-hour workday with normal breaks.  The
> claimant can stand and/or walk for at least 6 hours out of an 8-hour workday with
> normal breaks. He would be limited to simple repetitive tasks, work with supervisors
> or coworkers occasionally, and [have] no contact with the public.

Id. at 25.  In support of his determination the ALJ stated summarized the evidence in the record.  He

specifically reviewed plaintiff's background, noting his basic education, age, living status, claimed

symptoms, and previous incarceration.  Id. at 26.  The ALJ did not discuss plaintiff's previous SSI

determination.  Id.

The ALJ reviewed the therapy notes from Grand Lake Mental Health Center, noting various

symptoms reported during those sessions (e.g., paranoia, hallucinations, depression, anxiety, blunted

affect) as well as the cognitive health of the plaintiff noted by the therapist (e.g., linear thought-

process, good attention span).  Id.  He ultimately accorded them "little weight" given that the

information was drawn from "subjective reports."  Id. at 32.  The ALJ noted plaintiff recognized

medication was useful in treating his symptoms and indicated that plaintiff obtained various

4

medications via Grand Lake Mental Health Center, though he did not discuss them or their dosages. Id.

The ALJ detailed the evaluation conducted by SSA consultant Heather Ranger Kobel, Ph. D., noting the clinical impression of schizoaffective disorder, bipolar type and the absence of reported hallucinations at the time of the examination. Id. at 27. The ALJ also discussed, briefly, the evaluation of Randy Cochran, Psy. D., which assessed that plaintiff could perform simple tasks, some complex tasks, but could not interact with the public. Id. The ALJ reviewed various results from tests given during evaluations that the plaintiff had taken, including a normal MoCA score, a PHQ-9 test indicating moderate depression, and GAF scores indicating serious symptoms. Id. at 26, 27, 32. He did not give the GAF scores great weight where he found they merely provided "snapshots of impaired and improved behavior." Id. at 32. However, the ALJ gave the SSA consultant opinions some weight based on how those opinions aligned with evidence of plaintiff's good hygiene and the evidence from the MoCA evaluation that plaintiff struggled with recall. Id. at 32. The ALJ also discussed the weight given to the evaluations provided by Dr. Mallgren. Finding those reports highly inconsistent with other medical sources in the record, as well as difficult to decipher, the ALJ afforded Dr. Mallgren's evaluations no weight. Id. at 29-30. Specifically, the ALJ found the MRFCA and MSF submitted in July were inconsistent with other record evidence of the plaintiff's capabilities in areas such as his basic hygiene, his ability to comprehend and follow basic instructions, and his ability or remember locations and work procedures. Id. at 29.

The ALJ documented the frequent claims of audio and visual hallucinations made by plaintiff throughout, as well as certain testimony about plaintiff's home life and attempts to work with others. Id. at 28-29. The ALJ considered plaintiff's testimony regarding the severity and frequency of his

5

symptoms but found it inconsistent with other evidence in the record.  Id. at 30.  He specifically noted the fact that though plaintiff claimed he had been on medication while in prison, the Department of Corrections' records did not indicate evidence of mental health problems or treatment.[2] Id. at 31.  Finally, the ALJ considered a third-party function report prepared by plaintiff's mother, who discussed various aspects of the plaintiff's life.  He found portions of her report should be given weight, where they were consistent with the record, but gave that little weight to her assessment of his symptoms and medical issues.  Id. at 33.  The ALJ gave some, but not great, weight to her statements and noted that there was the potential that plaintiff's mother's statements were biased.  Id.

At steps four and five of the analysis, the ALJ determined that plaintiff had no past relevant work but there were jobs available in the regional and national economies that plaintiff could perform with his RFC.  Id. at 32-33.  Based on this finding, the ALJ determined that plaintiff was not disabled.  The Appeals Council found no basis to change the ALJ's decision and denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Id. at 5-7.  Plaintiff filed this case requesting judicial review of the denial of his claim for SSI benefits, and the matter was referred to a magistrate judge for a report and recommendation.  The magistrate judge recommends that the Commissioner's decision be affirmed.

## II. LEGAL STANDARD

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation.  However, the parties may object to the

---

[2]     The Court notes that, although the ALJ stated that plaintiff denied hallucinations at a certain time, the exhibit the ALJ cites for this proposition states the opposite. Dkt. # 10, at 31 (citing Exhibit 3F).

magistrate judge's recommendation within 14 days of service of the recommendation.  Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999).  The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part.  Fed. R. Civ. P. 72(b).

In reviewing a decision of the ALJ, this Court is limited to determining whether the ALJ has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F. 3d 1257, 1261 (10th Cir. 2005).  The Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004).  The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Grogan, 399 F. 3d at 1261.  A court may neither reweigh the evidence nor substitute its judgement for that of the ALJ.  See Hackett v. Barnhart, 395 F. 3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the ALJ's decision stands if it is supported by substantial evidence.  See White v. Barnhart, 287 F. 3d 903, 908 (10th Cir. 2002).

7

### III. ANALYSIS

The plaintiff objects to the ALJ's decision on three grounds. First, plaintiff argues that the ALJ erred by improperly discounting the weight given to the evaluations of the treating physician, Dr. Mallgren, and by failing to a provide an adequate explanation for declining to give those evaluations controlling weight. Dkt. # 17, at 3-5.  Second, plaintiff argues that the ALJ erred by failing to adequately analyze plaintiff's obesity.  Id. at 5-6.  Finally, plaintiff argues that the ALJ failed to perform a proper consistency analysis.  Id. at 6-10.  Because the Court finds that the ALJ's determination as to Dr. Mallgren's evaluations was improper, it is not necessary to address plaintiff's second and third objections.

Plaintiff objects to the magistrate judge's report and recommendation, arguing that the ALJ failed to properly weigh the 2018 evaluations[3] of Dr. Mallgren, and failed to a provide an adequate explanation for declining to give Dr. Mallgren's evaluations any weight. Dkt. # 17, at 3-5. Defendant responds that the magistrate judge correctly affirmed the ALJ's decision to give no weight to Dr. Mallgren's opinions.  Dkt #18, at 1.  The ALJ accorded no weight to the 2018 evaluations for several reasons.  With respect to Dr. Mallgren's MRFCA, the ALJ first took issue with the non-SSA form Dr. Mallgren used.  Dkt. # 10, at 29.  Second, the ALJ found that the illegibility of the date on the form prevented him from being able to connect it to treatment notes.  Id.  Third, the ALJ found that a form that evaluated the patient with check boxes and no further explanation was inadequate. Id.  Finally, the ALJ found that the treatment notes did not support the severe limitations Dr. Mallgren reported in his evaluations.  Id.  The ALJ stated similar reasons for giving no weight to Dr. Mallgren's MSF.  He found that the MSF form was "poorly fabricated," that a portion of the form

---

[3]     The 2018 evaluations of Dr. Mallgren refer to the MRFCA and MSF completed in July 2018.

was illegible, that the activities and interests portion was blank, that Dr. Mallgren had not seen

plaintiff in over a year, that his treatment notes did not reflect the severe limitations indicated on the

form, and that those notes were not consistent with other medical opinions.

When determining whether a claimant is disabled, the ALJ must evaluate every medical

opinion in the record. 20 C.F.R. § 404.1527(b).[4]  When evaluating a treating physician's opinion

under § 404.1527, "the ALJ must complete a sequential two-step inquiry, each step of which is

analytically distinct." Brownrigg v. Berryhill, 688 F. App'x 542, 548 (10th Cir. Apr. 19, 2017)[5]

(quoting Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011)).  First, the ALJ must determine

whether the medical opinion qualifies for "controlling weight."  Id.  A treating physician's medical

opinion is given controlling weight if, on the issues of the nature and severity of the plaintiff's

impairments, the opinion is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

record." § 404.1527(c)(2).  If the treating physician's opinion is entitled to controlling weight, the

ALJ's analysis of the weight of that opinion is complete.  However, if the ALJ determines that the

medical opinion is not entitled to controlling weight, or if the ALJ is evaluating a non-treating

---

[4]     The Court notes that it does not appear that the ALJ assessed, evaluated, or accorded weight
        to the opinions of Robert Blasdel as required under 20 C.F.R. § 404.1527(c).  Mr. Blasdel
        is a licensed behavioral health practitioner who saw plaintiff regularly as his counselor at
        Grand Lake Mental Health Center. See Harrold v. Berryhill, 714 F. App'x 861, 868 (10th Cir.
        2017) (finding that while "there is no question that Mr. Blasdel, though not an 'acceptable
        medical source,' was still a treating medical source whose opinions should have been
        evaluated and weighed according to the regulatory factors set out at 20 C.F.R. §
        404.1527(c).").  "In fact, the Social Security Administration has affirmed that opinions from
        such non-acceptable medical sources 'are important and should be evaluated on key issues
        such as impairment severity and functional effects.'" Id. at 869 (citations omitted).

[5]     This and other cited unpublished decisions are not precedential, but may be cited for their
        persuasive value.  See Fed. R. App. P. 31.1; 10th Cir. R. 32.1.

physician's opinion, the ALJ must move onto step two and apply the following factors to determine

how much weight to give the medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).

As an initial matter, it does not appear the ALJ ever made a determination as to whether Dr.

Mallgren–who administered treatment to the plaintiff at Grand Lake Mental Health Center–

constituted a treating physician.  Without such analysis it is not evident from the record whether Dr.

Mallgren's 2018 evaluations were potentially entitled to "controlling weight" prior to the ALJ's

finding of deficiencies.  This is error.  Even where the sole issue before the court is "whether remand

is required due to the ALJ's failure to conduct a proper treating physician analysis" the court will

remand on that determination. Smith v. Colvin, No. 13-CV-0269-CVE-TLW, 2014 WL 2216998,

at *4 (N.D. Okla. May 29, 2014).  The ALJ is required to make a finding as to whether Dr. Mallgren

constituted a treating physician in order for the Court to properly evaluate that decision.[6]  Without

---

[6]    The Court notes Dr. Mallgren has seen plaintiff more than once and has access to plaintiff's progress via treatment notes, therapy sessions, and medication adjustments made at Grand Lake Mental Health Center.

that analysis this Court cannot determine whether Dr. Mallgren's opinions are properly given no weight.[7]

However, regardless of whether Dr. Mallgren is considered a treating physician, the Court finds that the ALJ's explanation for assigning no weight to Dr. Mallgren's evaluations regarding plaintiff's limitations is not supported by substantial evidence. As an initial matter, the Court notes that the ALJ appears to have misinterpreted Dr. Mallgren's MRFCA. The ALJ notes that the form states "the claimant could never to minimally remember locations and work procedures; understand, remember, and carry out very short and simple instructions; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions." Dkt. # 10, at 29. In fact, the MRFCA states that these tasks are "never to minimally" a problem for the claimant. Id. at 400. This misinterpretation of the MRFCA led to many of the purported inconsistencies found with Dr. Mallgren's own opinions (including the MSF) and the opinions of other medical professionals and sources cited to in the ALJ's report.[8] Id. at 29-

---

[7]     In addition to reconsidering the weight afforded to Dr. Mallgren's 2018 evaluations, the Court invites the ALJ to review and reconsider its conclusion in step three of its analysis, particularly with respect to "paragraph C". The Court notes that no medical professional appears to deny or doubt plaintiff's hallucinatory symptoms in the record. Instead, plaintiff is consistently encouraged to take medications prescribed to alleviate those symptoms and attend continued therapy sessions.

[8]     Even where Dr. Mallgren's opinions appear inconsistent with the opinions of another physicians, the finding that Dr. Mallgren's opinions are entitled to no weight is likely error. "[W]hile the existence of inconsistent evidence, without more, allows an ALJ to determine that a treating physician's opinion is not entitled to controlling weight, the ALJ may not rely solely on inconsistent evidence to determine that a treating physician's opinion is entitled to no weight whatsoever." Chandler v. Berryhill, No. 17-CV-0306-CVE-FHM, 2018 WL 6251381, at *5 (N.D. Okla. Nov. 29, 2018). Here, the ALJ determined that Dr. Mallgren's evaluations should be given no weight primarily based on inconsistencies not supported by substantial evidence. Once that issue is resolved, the ALJ still must "give good reasons, tied to the factors specified in the cited regulations" and discussed in Watkins, for the weight

30.  In light of the above, the ALJ's decision to accord Dr. Mallgren's evaluations no weight is not supported by substantial evidence the ALJ must reconsider the analysis as to those opinions.

In addition, the Court finds many of the remaining rationales for giving no weight to Dr. Mallgren's MRFCA form fail to constitute "good reasons, tied to the factors specified in the cited regulations." Krauser, 638 F.3d at 1330.  First, the Court notes that the ALJ's determination that Dr. Mallgren's MRFCA form was "poorly fabricated" is without merit.  Dkt. # 10, at 29.  The ALJ opined that Dr. Mallgren should have instead used the readily available SSA form "that uses standard forms of measurement instead of attempting to create new measurements (specifically using 'never to minimally' as a form of measurement)." Id.  However, a review of the MRFCA form and the SSA form reveal that both contain nearly identical categories of assessment. Compare SSA-4734-F4-SUP with Dkt. # 10, at 400.  Additionally, the metric representing that patient "never to minimally" has a problem on Dr. Mallgren's form is a reasonable alternative to the categories "no evidence of limitation" and "not significantly limited" on the SSA form. Id.  While the SSA Program Operations Manual System noted in the magistrate judge's opinion states that the SSA form "is to be used" to document mental residual functioning capacity, the form submitted was not materially different from the SSA form.  Dkt. # 16, at 8.  Moreover, the Tenth Circuit has questioned the Commissioner's representations that a particular form must be used in reporting medical source opinions regarding mental health.  Harrold v. Berryhill, 714 F. App'x 861, 868 (10th Cir. 2017) (finding the use of a particular SSA form was not required).  The ALJ's other form-related critique, that Dr. Mallgren's MRFCA uses check boxes, is similarly without merit.  Dkt. # 10, at 29.  The SSA form uses check boxes nearly identical to the ones used on the MRFCA.  That there is not an additional page for

assigned. Krauser, 638 F.3d at 1330.

12

further remarks on the MRFCA is not material in this matter where the MSF sent with the MRFCA provides additional explanation. The ALJ's final issue with the MRFCA (unrelated to Dr. Mallgren's purported inconsistencies) was related to the legibility of the date. Id. However, the Court found no issue deciphering the month and year on the MRFCA as July 2018.[9]

Similarly, the Court finds some of the remaining rationales for giving no weight to Dr. Mallgren's MSF form fail to constitute "good reasons, tied to the factors specified in the cited regulations." Krauser, 638 F.3d at 1330. First, the ALJ's objection based on Dr. Mallgren's use of non-SSA forms is unpersuasive where he does not indicate the deficiency in the MSF provided. Dkt. #10, at 30. Second, the fact that the daily activities and interests section is not complete is not material considering plaintiff's denial of any interests or activities beyond maintaining his upkeep. While portions of the form are difficult to decipher, the ALJ should not penalize plaintiff based on his physician's poor handwriting. The ALJ could instead attempt to clarify the doctor's opinion with the treatment facility. Third, even though Dr. Mallgren had not seen the claimant for at least a year, his evaluation of plaintiff, a regular patient at the Grand Lake Mental Health Center, was also likely informed by his access to the many treatment records at that facility that were prepared in the interim. The remaining issues the ALJ had with respect to consistency are difficult to discern from the ALJ's written opinion. See, e.g., id. (citing to various treatment notes from 2016 to demonstrate inconsistencies with the MSF written in 2018). These findings should be reexamined by the ALJ in light of the misapprehension of Dr. Mallgren's other report.

---

[9]     The date on the MRFCA is likely 7/25/18–the same date indicated on the MSF. Compare Dkt. # 10 at 401 with id. at 403. The Court also notes that the table of contents created for the administrative record in this case correctly reflects the month and year of the report. Id. at 4.

In light of the above, the Court finds the ALJ erred by failing to conduct any analysis evaluating whether Dr. Mallgren was, in fact, a treating physician and whether his opinion should be given controlling weight.  Further, the ALJ erred in his decision to give no weight to a physician's medical evaluations where the ALJ's reasons for completely rejecting his opinion are not supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 16) is **rejected**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **reversed and remanded for further administrative proceedings**.  A separate judgment is entered herewith.

**DATED** this 15th day of September, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

14